## IN THE CIRCUIT COURT FOR BALTIMORE CITY

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

ALEXANDRA M. CLANCY
1001 California Street
San Francisco, CA  94108,

        Plaintiff,

v.

J. W. THOMPSON WEBB,
as Personal Representative of the
Estate of THOMAS L. CLANCY, JR.
and Trustee of the Trusts Under
the Last Will and Testament of
THOMAS L. CLANCY, JR.
100 Light Street
Baltimore, Maryland 21202

and

JACK RYAN ENTERPRISES, LTD.
100 Light Street
Baltimore, Maryland 21202

Serve On: Resident Agent
J. W. Thompson Webb
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, Maryland 21202

and

JACK RYAN LIMITED PARTNERSHIP
5930 Sheridan Point Road
Prince Frederick, Maryland 20678

Serve On: Resident Agent
Jerrold A. Thrope
Gordon Feinblatt, LLC
233 E. Redwood Street
Baltimore, Maryland 21202

Case No. _____

**COMPLAINT FOR
DECLARATORY JUDGMENT**

COPY


EXHIBIT
*A*

and                                  :

RUBICON, INC.                        :
100 Light Street
Baltimore, Maryland 21202            :

Serve On: Resident Agent            :
J.W. Thompson Webb
Miles & Stockbridge P.C.            :
100 Light Street
Baltimore, MD 21202,                :

       Defendants.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## COMPLAINT FOR DECLARATORY JUDGMENT

Alexandra M. Clancy ("Mrs. Clancy"), by her undersigned attorneys, sues J. W.

Thompson Webb ("Mr. Webb" or "Personal Representative"), as Personal Representative of the

Estate of Thomas L. Clancy, Jr. (the "Estate"),[1] and as Trustee of the Trusts established under

Tom Clancy's Last Will and Testament, Jack Ryan Enterprises, Ltd. ("JREL"), Jack Ryan Limited

Partnership ("JRLP"), and Rubicon, Inc. ("Rubicon"), and states:

## NATURE OF PROCEEDING

1.     This Complaint seeks to determine the ownership of Jack Ryan: the famous

literary character created by the renowned author Tom Clancy in *The Hunt for Red October*

(hereinafter "*Hunt*").

2.     Mrs. Clancy further seeks a declaration that Rubicon, a corporation wholly-owned

by the Estate, owns the character Dominic Caruso and other copyrightable characters created by

Tom Clancy in *The Teeth of the Tiger*, published in 2003, in which he also created "The

---

[1] The "Estate" means and refers to the Estate of Thomas L. Clancy, Jr., Estate No. 101962, in the
Orphans' Court for Baltimore City.

2

Campus," a "black ops" "off-the-books" intelligence agency, and featured in numerous subsequent works.

3.      This is the second chapter in Mrs. Clancy's struggles to compel Mr. Webb's adherence to his fiduciary responsibilities as Personal Representative of the Estate.  In the first chapter, Mrs. Clancy successfully challenged Mr. Webb's erroneous assertion that a trust established under her late husband's Will for her benefit, and which qualified for the estate tax marital deduction, must pay one-half of all federal and state estate taxes.  Mr. Webb's position was not only contrary to the provisions of Tom Clancy's Will, but also would have caused the Estate to pay millions of additional estate taxes.

4.      The Orphans' Court for Baltimore City agreed with Mrs. Clancy in an opinion affirmed by the Maryland Court of Appeals. *See Bandy v. Clancy,* 449 Md. 577 (2016).  As a result, Mrs. Clancy's trust was wholly exonerated from the payment of any estate tax, and the Estate's overall estate tax burden was reduced by some $4 million dollars.

5.      Mrs. Clancy now asks this Court for a declaration that will ultimately require Mr. Webb to marshal, secure, and account for a signature asset of the Estate – and Tom Clancy's most prized possession – the literary character Jack Ryan, and the characters he created in The Campus book series.

6.      Tom Clancy was the sole creator of the Jack Ryan character.

7.      Tom Clancy made Jack Ryan; and, in a sense, Jack Ryan made Tom Clancy. Following the publication of *Hunt*, Mr. Clancy redeployed Jack Ryan many times.  Jack Ryan belonged to Tom Clancy from the date he created the character until his death in 2013.  Jack Ryan now belongs exclusively to Tom Clancy's Estate.

8.      Tom Clancy was also the sole creator of Dominic Caruso and the other

3

copyrightable characters in The Campus book series, including Jack Ryan, Jr. (Jack Ryan's son).

9.      Dominic Caruso and The Campus characters belonged to Tom Clancy's wholly-owned corporation Rubicon, from the date he created the character in 2003 until his death in 2013. Dominic Caruso and the other Campus characters now belong exclusively to Rubicon, which is 100%-owned by the Estate.

10.     Mr. Webb, in dereliction of his fiduciary duties, has failed repeatedly to defend the Estate's unique interest in Tom Clancy's characters.

11.     Specifically, Mr. Webb, in the name of Mr. Clancy's Estate, has:

- Entered into agreements that have surrendered the Estate's interest in Jack Ryan and The Campus characters to co-Defendants JRLP and JREL;

- Failed properly to account for payments received for books published after Mr. Clancy's death from works in which the Jack Ryan character and The Campus characters are featured;

- Failed to collect revenues due the Estate for such post-death publications.

12.     Rather than marshal these extraordinarily valuable assets for the benefit of the Estate, as he was and is duty-bound to do, Mr. Webb has inexplicably favored co-Defendants JREL and JRLP, to the detriment of the Estate, by allowing them to participate in post-death book revenues based upon his erroneous and groundless belief that JREL, and not Tom Clancy, was the owner of the Jack Ryan character at the time of Tom Clancy's death, and that JREL and JRLP are otherwise entitled to participate in post-death book revenues from the sale of The Campus books.

13.     Mr. Webb's actions fly in the face of Tom Clancy's consistent and successful assertion that he, and no one else, owned the rights to the character Jack Ryan, and contradict

4

Rubicon's exclusive exploitation of all The Campus books, and characters, during Tom Clancy's lifetime.

14.     Mrs. Clancy has been impelled to commence this declaratory judgment action by reason of Mr. Webb's continued and repeated failure, in his administration of the Estate, to protect the Estate's ownership rights in and to the characters created by Tom Clancy, to terminate the uncertainty and controversy giving rise to this cause.

## PARTIES

15.     Plaintiff, Mrs. Clancy, is the surviving spouse of Tom Clancy, who died on October 1, 2013.

16.     Defendant Mr. Webb is an attorney with Miles & Stockbridge, P.C. ("Miles & Stockbridge"), and is the Personal Representative of Tom Clancy's Estate and Trustee of the Trusts established under Tom Clancy's Last Will and Testament.  Mr. Webb was appointed Personal Representative on October 10, 2013.

17.     Defendant JREL is a Maryland corporation, formed on May 28, 1985.  It has its principal place of business in Baltimore, Maryland.  When Tom Clancy was alive, JREL was owned 40% by Tom Clancy, 40% by Wanda King (from whom he was divorced in 1999), and 20% by Mr. Clancy's children from his first marriage, Michelle E. Bandy, Christine C. Blocksidge, Thomas L. Clancy III and Kathleen W. Clancy (collectively, the "Older Children"). Tom Clancy was President.

18.     Post-mortem, JREL is owned 40% by the Estate, 40% by Tom Clancy's former wife, Wanda King, and 20% by Older Children.  Wanda King is President.

19.     Defendant JRLP is a Maryland limited partnership, formed on February 26, 1992. It has its principal place of business in Prince Frederick, Maryland.  It is owned in equal shares

by the Estate and by Wanda King, who is also the General Partner.[2]

    20.     Defendant Rubicon is a Maryland corporation, formed on November 15, 1995. Prior to his death, Rubicon was wholly-owned by Mr. Clancy. Rubicon is now owned 100% by Tom Clancy's Estate.

## JURISDICTION AND VENUE

    21.     This Court has subject matter jurisdiction:

    (a)     There exists a genuine controversy between Mrs. Clancy and the Defendants concerning ownership of certain of the decedent's literary rights and the Personal Representative's protection of, and accounting for, the proceeds from the same.

    (b)     The Court has jurisdiction to grant declaratory relief determining "any question of construction or validity arising under [any] instrument … [or] contract" at issue in this proceeding and to grant "a declaration of rights, status, or other legal relations under it." MD. CODE ANN., CTS. & JUD. PROC. § 3-406.

    (c)     This Court also has jurisdiction to grant declaratory relief determining "any question arising in the administration of [an] estate or trust, including questions of construction of wills and other writings" and directing "the personal representative … or trustees to do or abstain from doing any particular act in their fiduciary capacity." MD. CODE ANN., CTS. & JUD. PROC. § 3-408.

    (d)     The matter in controversy exceeds the value of $75,000, exclusive of interest and costs.

---

[2]   Wanda King is not a beneficiary of the Estate, but by Mr. Webb's actions in favoring JREL and JRLP in post-death book deals, Mr. Webb has essentially made her one.

22.     Venue is proper in Baltimore City. MD. CODE ANN., CTS. & JUD. PROC. § 6-201(b).

23.     Mrs. Clancy has standing as a "person interested as or through a personal representative, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or beneficiary of a trust, in the administration of a trust, or of the estate of a decedent," to obtain "a declaration of rights or legal relations in respect to the trust or the estate of the decedent." MD. CODE ANN., CTS. & JUD. PROC. § 3-408.

24.     Mrs. Clancy also has standing to invoke equity jurisdiction to resolve questions that the Personal Representative is unwilling or unable to bring to the court's attention that directly affect her substantial interests as the beneficiary of trusts under Tom Clancy's Will.

25.     A demand upon Mr. Webb to bring suit would be futile because his position is antagonistic and directly adverse to that of Mrs. Clancy.

## FACTS

### A.     Tom Clancy's Estate.

26.     Tom Clancy, the renowned author and resident of Baltimore City, died on October 1, 2013.

27.     Mrs. Clancy is a legatee and a beneficiary of certain testamentary trusts created under his Last Will and Testament.

28.     Mr. Clancy's Last Will and Testament, dated June 11, 2007, as amended by a First Codicil dated September 18, 2007, and a Second Codicil, dated July 25, 2013 (collectively, "the Will"), was admitted to probate on October 10, 2013 in the Orphans' Court for Baltimore City. The administration of the Estate remains open.

7

29.     Under his Will, Tom Clancy bequeathed his personal and real property to Mrs. Clancy. He directed that the remainder of this Estate be held in three parts: a "Marital Trust" for the benefit of Mrs. Clancy (representing one-third of the residue adjusted for certain specific bequests); a "Family Trust" for the benefit of Mrs. Clancy and their minor child (equal to one-half of the residue remaining after the creation of the Marital Trust); and two "Older Children's Trusts" (consisting of the remaining one-half of the residue after the creation of the Marital Trust).[3]

30.     On February 1, 2017, the Personal Representative filed his Revised Second Administration Account. Mrs. Clancy filed exceptions to the Account, based in part on Mr. Webb's failure to assert Tom Clancy's ownership of the Jack Ryan character. The resolution of such questions are outside the jurisdiction of the Orphans' Court. Moreover, the Orphans' Court lacks jurisdiction to grant the declaratory relief sought here.

31.     On July 26, 2017, the Orphans' Court stayed all proceedings in that court and authorized and directed Mrs. Clancy to file a declaratory judgment action in a court of general jurisdiction within 30 days. In compliance with the Orphans' Court Order, Mrs. Clancy files this action.

**B.     Tom Clancy's Ownership of the Jack Ryan Character.**

32.     On November 21, 1983, Tom Clancy, as "Author," entered into a contract with the United States Naval Institute ("USNI"), as "Publisher" (the "USNI Agreement"), to publish his first novel, *Hunt*.

---

[3]     As a result of the decision in *Bandy v. Clancy*, the Older Children's interest in the residue of the Estate has been reduced from approximately 37% to 20%, and Mrs. Clancy's share of the residue has increased from approximately 63% to 80%.

33.   *Hunt* featured the debut of the now world-famous character Jack Ryan, who was the novel's main character.

34.   Under the USNI Agreement, Tom Clancy, as "Author," "grant[ed] and assign[ed] to the Publisher the exclusive worldwide rights and any subsisting copyright, including the right to secure copyright and any renewals or extensions thereof," in connection with *Hunt*.

35.   Under the USNI Agreement, Tom Clancy, as "Author," also agreed "that he will not, without the written permission of the Publisher, publish or permit to be published any material based on, or derived from, or directly or competitive with [*Hunt*], so long as this agreement shall remain in force."

36.   There were no other parties to the USNI Agreement.  Neither JREL nor JRLP had been formed when Tom Clancy executed the USNI Agreement.

37.   The USNI Agreement did not specifically reference the Jack Ryan character.

38.   *Hunt* was first published on October 3, 1984.

39.   USNI applied for and received a certificate of copyright registration for *Hunt*, dated October 29, 1984, identifying Tom Clancy as the author.

40.   In late 1987 and early 1988, a dispute arose between Tom Clancy and USNI concerning ownership of the Jack Ryan character.

41.   In January 1988, counsel for USNI wrote Tom Clancy's intellectual property lawyer, Robert Youdelman ("Mr. Youdelman"), asserting that USNI had acquired all rights to *Hunt* under the USNI Agreement, and that use of *Hunt* characters by Mr. Clancy in subsequent works would constitute copyright infringement for which USNI was entitled to compensation.[4]

---

[4]   Mr. Youdelman now represents the Estate, Rubicon, JREL, and JRLP (collectively referred to as the "Author" in post-death book contracts with Putnam, which became Tom Clancy's publisher after *Hunt*).

42.     Mr. Youdelman responded that Tom Clancy, not USNI, owned the Jack Ryan character.

43.     In February 1988, on behalf of Tom Clancy and another USNI first-time author, Stephen Coonts (who had a similar dispute with USNI over the characters in his first novel, *Flight of the Intruder*), Mr. Youdelman filed a demand for arbitration with the American Arbitration Association, as required by their agreements with USNI.

44.     In the arbitration, Tom Clancy asserted that he alone held the rights to the character Jack Ryan and demanded a declaration that he owned the exclusive rights to the use of the character Jack Ryan in other novels, sequels and prequels, as well as other relief.  Stephen Coonts asserted similar claims.

45.     In its reply to the arbitration demand, USNI contended that it had the rights to the Jack Ryan character, and counterclaimed for an order barring Tom Clancy from using any *Hunt* characters in future books without compensating USNI.

46.     The Tom Clancy and Stephen Coonts companion cases were settled before the arbitration was heard.  In the settlement, the parties expressly acknowledged that Tom Clancy owned the rights to the characters in *Hunt*, including Jack Ryan.

47.     On September 28, 1988, Tom Clancy and Stephen Coonts entered into a written settlement agreement with USNI (the "USNI Settlement Agreement"), under which USNI released any rights in post-*Hunt* works by Tom Clancy, and agreed to "reassign the copyright[] in THE HUNT FOR RED OCTOBER . . . to Tom Clancy . . . or [his] designees, exclusive of book publishing rights."

48.     Addressing the gravamen of the dispute – ownership of the Jack Ryan character – the USNI Settlement Agreement provided further:  "Without limiting the foregoing, *the parties*

*acknowledge that all rights in and to the characters are the sole property of the respective authors."* (emphasis added).

49.     The USNI Settlement Agreement also provided: "The use of the characters in connection with RED OCTOBER is subject to the other terms of this agreement."

50.     Tom Clancy named JREL, then owned 40% by Tom Clancy, 40% by Wanda King, and 20% by the Older Children, as his "designee" to receive the reassignment of the *Hunt* copyright.

51.     Approximately three months after the execution of the USNI Settlement Agreement, on December 19, 1988, as required by the USNI Settlement Agreement, USNI executed a "Transfer of Ownership of Copyright and Assignment," transferring and assigning to JREL "[t]he exclusive worldwide rights of every kind and nature (now or hereafter known), any subsisting copyright, (including the right to secure copyright and any renewals or extensions thereof)," in *Hunt*, *"in accordance with the terms of the Agreements between Assignor and Thomas L. Clancy, Jr. dated November 21, 1983 and September 28, 1988.*" (emphasis added).

52.     The assignment made no mention of the character Jack Ryan.

53.     Because the "Transfer of Ownership of Copyright and Assignment" was made "in accordance with the terms of the Agreements between Assignor and Thomas L. Clancy, Jr. dated November 21, 1983 and September 28, 1988," and because the earlier USNI Settlement Agreement provided expressly that "all rights in and to the characters" of *Hunt* were the sole property of Tom Clancy, the USNI grant of "exclusive worldwide rights" and "copyright" in *Hunt* could not and did not include ownership of the Jack Ryan character.

54.     Accordingly, unless Tom Clancy subsequently assigned his rights to the character Jack Ryan, he remained the exclusive owner of the character Jack Ryan until his death on

11

October 1, 2013.

55.     Tom Clancy did not assign his rights to the character Jack Ryan to JREL or JRLP

after 1988.

**C.     Tom Clancy's First Marriage and Divorce Settlement.**

56.     Mr. Clancy married Wanda King in 1969.  They separated in 1996, and were

divorced in 1999.

57.     On December 28, 1998, Wanda King and Tom Clancy entered into an agreement

resolving the economic issues between them in connection with their impending divorce (the

"Marital Settlement Agreement").

58.     At the time of the Marital Settlement Agreement, Tom Clancy and Wanda King

each owned 40% of JREL.  The remaining 20% was owned by the Older Children.

59.     The Marital Settlement Agreement recites, in Exhibits A and B, the literary works

then owned respectively by JREL and JRLP.

60.     *The Hunt for Red October* (1984), *Red Storm Rising* (1986), *Patriot Games*

(1987), *The Cardinal of the Kremlin* (1988), *Clear and Present Danger* (1989), *The Sum of All

Fears* (1991), *The Tom Clancy Companion* (1992), and *Submarine* (1993) are listed as JREL

properties.

61.     *Without Remorse* (1993), *Debt of Honor* (1994), *Executive Orders* (1996),

*Military Reference Library (Armored Cav* (1994), *Fighter Wing* (1995), *Marine* (1996), *73

Easting* (1993), *Op-Center* (1995), and *Rainbow Six* (1998) are listed as JRLP properties.

62.     Consistent with the USNI Settlement Agreement, the Marital Settlement

Agreement acknowledged Tom Clancy's ownership of the Jack Ryan character, contemplated

that Tom Clancy would continue to exploit the Jack Ryan character, and provided for division of

revenue that he might receive from exploiting his rights in the Jack Ryan character as part of the division of the marital estate.

63.     Specifically, Paragraph 15 of the Marital Settlement Agreement provided (emphasis added):

> B. . . . In the event that Husband or an entity affiliated with him (other than JRLP and JREL) signs a contract with any third party relating to the story line, in whole or in part (and characters in connection therewith), from works owned by JRLP or JREL (other than incidental use, such as flashbacks), Husband shall cause the contract to be assigned to JRLP or JREL as the case may be. *Otherwise, Husband shall be free to use the characters in the works owned by JRLP or JREL in any sequel to any of those works or in any other future work that Husband may create without the approval of or obligation to Wife.*

64.     Thus, the Marital Settlement Agreement specifically contemplates that Tom Clancy would be signing contracts relating to the characters in *Hunt*, including Jack Ryan.

65.     The Marital Settlement Agreement, entered into 10 years after the USNI Settlement Agreement, confirms that the USNI assignment to JREL of its rights in and to *Hunt* did not include any rights to the characters in *Hunt*.

66.     In the divorce, and in the negotiation of the Marital Settlement Agreement, Tom Clancy was represented by Lowell R. Bowen, of Mr. Webb's firm, and Wanda King was represented by Sheila K. Sachs, whose firm, Gordon Feinblatt, LLC ("Gordon Feinblatt), is now counsel to JREL and JRLP.[5]

**D.      Tom Clancy's Work Authored for Rubicon.**

67.     Following publication of *Hunt*, Tom Clancy entered into employment agreements with JREL and JRLP pursuant to which he wrote books for hire.  Thus, Tom Clancy was "employed" by JREL pursuant to agreements dated February 4, 1992, and January 1, 1994.

---

[5]  Gordon Feinblatt also represented the Older Children in the *Bandy v. Clancy* litigation, and upon information and belief also acts as counsel for Wanda King, individually.

68.     Similarly, Tom Clancy was "employed" by JRLP pursuant to an agreement dated February 26, 1992.

69.     Tom Clancy terminated his employment agreements with both JREL and JRLP, pursuant to which Tom Clancy had authored books for hire, as of December 31, 1997.

70.     Thereafter, beginning in 2000, until his death in 2013, Tom Clancy authored or co-authored eight more best-sellers:

| | Book Title | Publication Date | Featured Character(s) |
|---|---|---|---|
| 1. | *The Bear and the Dragon* | 2000 | Jack Ryan |
| 2. | *Red Rabbit* | 2002 | Jack Ryan |
| 3. | *The Teeth of the Tiger* | 2003 | Jack Ryan, Jr; Caruso brothers. |
| 4. | *Dead or Alive* | 2010 | Jack Ryan; Jack Ryan, Jr.; Caruso brothers. |
| 5. | *Against All Enemies* | 2011 | Max Moore; Dominic Caruso |
| 6. | *Locked On* | 2011 | Jack Ryan; Jack Ryan, Jr.; Dominic Caruso |
| 7. | *Threat Vector* | 2012 | Jack Ryan; Jack Ryan Jr.; Dominic Caruso |
| 8. | *Command Authority* | 2013 | Jack Ryan; Jack Ryan Jr.; Dominic Caruso |

71.     Rubicon, created by Tom Clancy in 1995 and wholly-owned by Tom Clancy, received 100% of the net revenues from *The Bear and the Dragon* and *Red Rabbit*, which

featured his character, Jack Ryan.

72.     Neither JREL nor JRLP received any revenue from *The Bear and the Dragon* and

*Red Rabbit.*

73.     The Personal Representative has acknowledged expressly that the copyrights for

the Caruso/Campus books are owned exclusively by Rubicon.  As stated by his counsel:

> Mr. Clancy created the character Dominic Caruso in *The Teeth of the
> Tiger* (published 2003).  Also introduced in that novel was "The Campus," a
> "black ops" "off-the-books" intelligence agency for which Dominic Carsuo [*sic*]
> becomes an operative.  As the copyright for *The Teeth of the Tiger* and the
> subsequent titles following the exploits of Mr. Caruso and The Campus (*Dead or
> Alive, Locked On, Threat Vector,* and *Command Authority*) are owned by
> Rubicon, Rubicon owns the copyrights with regard to Dominic Caruso and other
> copyrightable Campus characters.

74.     Rubicon received 100% of the net revenues from the sale of these six pre-death

books, published between 2003 and 2013.

75.     Neither JREL nor JRLP shared in the proceeds, nor asserted any rights to share in

the proceeds, earned by any of these pre-death, post-divorce works.

76.     From 2000 to 2013, Tom Clancy was represented by Mr. Webb's law firm and by

Mr. Youdelman.

77.     Mr. Webb is now taking a position, upon the advice of Mr. Youdelman,[6] that is

entirely inconsistent with the advice that Tom Clancy received from Mr. Youdelman concerning

Tom Clancy's rights to the characters and revenues from the post-divorce books during the 13

years prior to his death.

---

[6]   Post-mortem, Mr. Youdelman now represents JREL, JRLP, Rubicon, and the Personal Representative
of the Estate, in connection with intellectual property matters.

E.     **Post-Death Book Deals for Works Featuring Jack Ryan.**

78.     In 2014, Mr. Webb, as Personal Representative of the Estate, signed an agreement with Putnam, pursuant to which the parties – Putnam (as publisher), and the Estate, Rubicon, JREL, and JRLP (collectively as "Author") – agreed to the publication of two literary works as "Tom Clancy" novels.  One of these novels, *Full Force and Effect*, featured the Jack Ryan character.

79.     The Personal Representative, based upon advice from Mr. Youdelman that JREL owned the character Jack Ryan, agreed with Sheila K. Sachs (counsel for Wanda King and the Older Children) to the following allocation of revenues from *Full Force and Effect*: 1/3 to JREL, 1/3 to the Estate, and 1/3 divided equally among JREL, JRLP, Rubicon, and the Estate.

80.     At the time, Mr. Webb claimed that this allocation was not intended "to bind any of the current parties nor future owners of Tom's name or any of the business entities."

81.     Thus, notwithstanding Tom Clancy's and, hence, the Estate's, 100%-retained ownership of the Jack Ryan character, the Personal Representative treated JREL and JRLP as owners of the Jack Ryan character such that they were entitled to share in the proceeds.

82.     In December 2014, Mrs. Clancy objected to Mr. Webb's failure to assert the Estate's rights in the Jack Ryan character and to the allocation of post-death book revenues.

83.     In response, Mr. Webb claimed that JREL was entitled to participate in the post-death books revenues based upon the advice of Mr. Youdelman (who also represented JREL) that JREL owned the Jack Ryan character by reason of USNI's 1988 assignment to JREL of the *Hunt* copyright pursuant to the USNI Settlement Agreement.

84.     On December 17, 2014, the Orphans' Court ordered that, if Mr. Webb entered into any contracts relating to intellectual property belonging to the Estate, he "shall place all

16

proceeds arising from such contracts in an escrow account maintained by the law firm of Miles & Stockbridge, P.C." The December 17, 2014 order remains in effect.

85.     In March 2015, Mr. Webb signed a four-book deal with Putnam. Two of the novels in this deal were "Jack Ryan" novels: *Under Fire* and *Commander in Chief*. Again, Mr. Webb joined with counsel for Wanda King and the Older Children in an agreement to allocate proceeds in the same manner as that agreed in the 2014 two-book deal, failing to take into account or to protect the Estate's ownership of the Jack Ryan character.

86.     On information and belief, Mr. Webb has signed book deals for "Tom Clancy" books in 2016 and 2017, and has entered into allocation agreements with JREL and JRLP to share in the proceeds in the same percentages as in 2014 and 2015, failing once again to take into account the Estate's ownership of the Jack Ryan character.[7]

87.     Accordingly, Mr. Webb has failed to marshal and collect these assets, or to account for them.

**F.     Post-Death Book Deals for Works Featuring The Campus and Campus Characters.**

88.     The other novel in the 2014 book deal, *Support and Defend*, was a Caruso/ Campus book featuring the Dominic Caruso character.

89.     Mr. Webb agreed to the following allocation of post-death proceeds for *Support and Defend*: 1/3 to Estate, 1/3 to Rubicon, and 1/3 divided equally between the Estate, Rubicon, JREL and JRLP.

90.     In other words, notwithstanding Rubicon's, and hence, the Estate's, 100%-

---

[7]     Unlike Rubicon, which was owned 100% by Tom Clancy, and is now wholly-owned by the Estate, 40% of JREL, and 50% of JRLP, are owned by Wanda King, who is not a beneficiary of Tom Clancy's Estate.

acknowledged ownership of "the copyrights with regard to Dominic Caruso and other copyrightable Campus characters," Mr. Webb treated JREL and JRLP as entitled to share in the proceeds.

91.     Mrs. Clancy, by her counsel, objected to the allocation of post-death book revenues from *Support and Defend*.

92.     The remaining two books to be published under the 2015 four-book deal were identified in the 2015 Putnam contract as Jack Ryan, Jr. Novels or Campus Novels.  Here again, Mr. Webb joined with counsel for Wanda King and the Older Children and agreed to allocate proceeds in the same manner as that agreed in the 2014 two-book deal, failing to take into account or to protect the Estate's ownership of these characters.

93.     The post-death book contracts agreed and entered into by Mr. Webb fail to recognize the revenue properly allocable to Rubicon based on its ownership of The Campus characters, including Jack Ryan Jr. (the son of Jack Ryan) and Dominic Caruso.

## COUNT I
*Declaratory Judgment*
*(Jack Ryan)*

94.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 93 of the Complaint.

95.     In view of the Defendants' position that JREL and JRLP own the rights to the Jack Ryan character, and Plaintiff's position that the Estate owns the character rights, an actual controversy exists between Plaintiff and the Defendants regarding ownership of the rights.

96.     Plaintiff further states that antagonistic claims are presented indicating the likelihood of imminent and inevitable litigation.

97.     A declaratory judgment would serve to terminate uncertainty and would terminate

18

the controversy giving rise to this cause.

98.    A declaratory judgment is necessary to resolve a question of title and ownership, essential to the administration of the Estate, that is outside the jurisdiction of the Orphans' Court.

99.    A declaratory judgment would afford certainty to the Estate and to parties interested in entering into contracts with the Estate.

100.    There exists a justiciable controversy between Plaintiff and Defendants.

101.    Accordingly, Plaintiff is entitled to a declaratory judgment under MD. CODE ANN., CTS. & JUD. PROC. §§ 3-401 through 3-415, and in particular, §§ 3-406 and 3-408.

102.    Inasmuch as a declaratory judgment would serve to resolve the uncertainty and terminate the controversy giving rise to this action, Plaintiff is further entitled to relief under MD. CODE ANN., CTS. & JUD. PROC. § 3-409(a).

WHEREFORE, Alexandra M. Clancy prays:

A.    That this Court determine and adjudicate the rights of the parties under the relevant agreements, and declare as follows:

> (1)    Tom Clancy owned the Jack Ryan character at the time of his death;

> (2)    At his death, ownership of the Jack Ryan character passed to Tom Clancy's Estate;

> (3)    As of the date of Mr. Clancy's death, neither JREL nor JRLP had any ownership interest in the Jack Ryan character, and neither entity has a right to share in revenue from any post-death published works featuring the Jack Ryan character;

> (4)    All revenue from any post-death books featuring the Jack Ryan character, is the property of the Estate;

B.    That the Court award Plaintiff costs of these proceedings and award reasonable attorney's fees; and

     C.     That this Court award such other and further relief as the nature of this cause may require.

## COUNT II
### Declaratory Judgment
(The Campus characters including Jack Ryan, Jr. and Dominic Caruso)

103.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 93 of the Complaint.

104.     In view of the Defendants' position that JREL and JRLP are entitled to share in revenue from The Campus novels, and Plaintiff's position that the Estate, through its wholly-owned entity, Defendant Rubicon, owns the character rights, an actual controversy exists between Plaintiff and the Defendants regarding ownership of the rights.

105.     Plaintiff further states that antagonistic claims are presented indicating the likelihood of imminent and inevitable litigation.

106.     A declaratory judgment would serve to terminate uncertainty and would terminate the controversy giving rise to this cause.

107.     A declaratory judgment is necessary to resolve a question of title and ownership, essential to the administration of the Estate, that is outside the jurisdiction of the Orphans' Court.

108.     A declaratory judgment would afford certainty to the Estate and to parties interested in entering into contracts with the Estate.

109.     There exists a justiciable controversy between Plaintiff and Defendants.

110.     Accordingly, Plaintiff is entitled to a declaratory judgment under MD. CODE ANN., CTS. & JUD. PROC. §§ 3-401 through 3-415, and in particular, §§ 3-406 and 3-408.

111.   Inasmuch as a declaratory judgment would serve to resolve the uncertainty and terminate the controversy giving rise to this action, Plaintiff is further entitled to relief under MD. CODE ANN., CTS. & JUD. PROC. § 3-409(a).

WHEREFORE, Alexandra M. Clancy prays:

A.   That this Court determine and adjudicate the rights of the parties under the relevant agreements, and declare as follows:

   (1)   Rubicon owned the copyrights to Jack Ryan, Jr., Dominic Caruso, and other copyrightable Campus characters at the time of Tom Clancy's death;

   (2)   As of the date of Mr. Clancy's death, neither JREL nor JRLP had any ownership interest in Jack Ryan, Jr., Dominic Caruso, or other copyrightable Campus characters, and neither entity has a right to share in revenue from any post-death published works featuring any of these characters;

   (3)   All revenue from any post-death books featuring the Jack Ryan, Jr., Dominic Caruso, and other copyrightable Campus characters, is the property of Rubicon.

B.   That the Court award Plaintiff costs of these proceedings and award reasonable attorney's fees; and

C.   That this Court award such other and further relief as the nature of this cause may require.

Norman L. Smith
Jeffrey E. Nusinov
Paul D. Raschke
NUSINOV SMITH LLP
6225 Smith Avenue, Suite 200B
Baltimore, Maryland 21209
(410) 554-3600
(410) 554-3636 (fax)
nsmith@nusinovsmith.com

- and –

Lansing R. Palmer
Erin M. Maddocks
Amanda Klopp
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103
(212) 880-3800
(212) 880-8965 (fax)
lansing.palmer@akerman.com

*Attorneys for Plaintiff Alexandra M. Clancy*

Dated:  August 25, 2017