## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ALEXANDRA M. CLANCY,                          :

         Plaintiff,                          :                    Case No. 17-cv-03371-ELH

v.                                                          :

JACK RYAN ENTERPRISES,                     :
LTD., *et al.*,
                                                            :
         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S MEMORANDUM REGARDING SUBJECT MATTER JURISDICTION

Alexandra M. Clancy, Plaintiff, by her attorneys, submits this Memorandum of Law, as directed by the Court, to address the issue of federal jurisdiction over this case.

### I.    INTRODUCTION

Tom Clancy, the renowned author and Maryland resident, died on October 1, 2013. He is survived by his spouse, Plaintiff Alexandra Clancy. An estate was opened in Baltimore City by the Defendant Personal Representative, where it remains pending (the "Estate"). The present litigation arises from the administration of the Estate.

This case began with Plaintiff Alexandra M. Clancy's filing of exceptions to a "Revised Second Administration Account" filed in the Orphans' Court by Defendant J.W. Thompson Webb, Personal Representative of the Estate. Mrs. Clancy alleges in her exceptions that, at his death, Tom Clancy owned the exclusive rights to the character "Jack Ryan" he created in 1984 in *The Hunt for Red October*, and that the Personal Representative had failed to properly account

for – and claim for the Estate – revenues from books published after Tom Clancy's death featuring Jack Ryan.  The Defendants disagreed.

Because the Orphans' Court lacks the power to adjudicate the ownership of literary characters, the Orphans' Court, by Consent Order dated July 25, 2017, directed Mrs. Clancy to file a declaratory judgment action in a court of general jurisdiction.

## II.    FACTS

Mrs. Clancy's complaint, filed in the Circuit Court for Baltimore City on August 25, 2017 (the "Complaint"), named as Defendants J.W. Thompson Webb, Personal Representative of the Estate ("Personal Representative"), Jack Ryan Enterprises, Ltd. ("JREL") and Jack Ryan Limited Partnership ("JRLP").[1]   The Defendants filed separate answers to the Complaint on October 13, 2017.  The Personal Representative filed a counterclaim on October 13, 2017.  JREL and JRLP filed a counterclaim on November 13, 2017 (the "Counterclaim") and, based on their Counterclaim, JREL and JRLP have removed the case to this Court.[2]  Neither the Complaint nor the Counterclaim involves a federal question, because the case presents only state-based contract claims.  Furthermore, the Defendants' removal notice is untimely and in their Notice of Removal the Defendants have made no attempt to justify or show cause for their late filing.

Mrs. Clancy asserts that, because Tom Clancy owned the "Jack Ryan" character at his death, those ownership rights devolve to the Estate.  Thus, Mrs. Clancy argues, the Personal Representative impermissibly surrendered the Estate's interest in certain literary characters, including Jack Ryan, by failing to recognize the Estate's ownership of those character rights and

---

[1]  Rubicon, Inc. ("Rubicon"), an entity wholly-owned by the Estate, is a nominal defendant.

[2]    The Personal Representative's counterclaim asserts no copyright claims but the Personal Representative joins and consents to the Notice of Removal.

by entering into post-death book deals that impermissibly allocated revenues from books featuring the Jack Ryan character to Defendants JREL and JRLP.

Mrs. Clancy's Complaint, as the removing Defendants acknowledge, "is based on issues of contract interpretation and therefore does not raise any federal claim."  Notice of Removal at ¶ 4.  The sole basis for removal, then, must be the Counterclaim filed on November 13, 2017, 80 days after first receiving notice of Mrs. Clancy's action.

## III.    ARGUMENT

### A.    Federal Question Removal Requires the Presence of a Substantial Disputed Question of Federal Law Whose Resolution Is Essential to Adjudication of the Claim

A defendant's right to remove a case from state to federal court arises from 28 U.S.C. § 1441(a), which provides in pertinent part:

> Except as otherwise provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

*Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F. 3d 148, 151 (4th Cir. 1994); *see also Link Telecommunications, Inc. v. Sapperstein*, 119 F. Supp. 2d 536, 539 (D. Md. 2000).  District courts have original jurisdiction over a matter, if a civil action "[arises] under the Constitution, laws or treaties of the United States."  28 U.S.C. § 1331.  Thus, if a complaint raises a federal cause of action, or "if a federal question is presented on the face of plaintiffs' properly pleaded complaint," a defendant may remove the action to a federal court pursuant to 28 U.S.C. §1441(b).  *Prihoden v. Spritz*, 914 F. Supp. 113, 116 (D. Md. 1996); *see also Owen v. Carpenters' District Council*, 161 F.3d 767, 772 (4th Cir. 1998).

A case may also "arise under" federal law, "where the vindication of a right under state law *necessarily* turn[s] on some construction of federal law" or when "it appears that some

3

substantial disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-13 (1983) (emphasis added).   Removal is not proper, however, due to "the mere presence of a federal issue in a state cause of action."  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1986).[3]   Rather, the federal law must supply an "element, and an essential one, of the plaintiff's cause of action."  *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936).

Because removal raises "significant federalism concerns," the removal statutes must be strictly construed, and all doubts must be resolved in favor of remanding the case to state court. *Maryland Stadium Authority v. Ellerbe Becket, Inc.,* 407 F.3d 255, 260 (4th Cir. 2005); *Mulcahey v. Columbia Organic Chemicals Co.,* 29 F.3d 148, 151 (4th Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)).  The burden of establishing federal jurisdiction is placed on the party seeking removal. *Id.* The party seeking to invoke removal jurisdiction bears the burden of stating facts in its notice of removal that establish such jurisdiction. *Eagle Nursing Home, Inc. v. Erie Ins. Group*, 981 F. Supp. 932, 933 (D. Md. 1997). "If federal jurisdiction is doubtful, a remand is necessary."  *Mulcahey*, 29 F.3d at 151. "Any doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction*." Marshall v. Manville Sales Corp*., 6 F.3d 229, 232 (4th Cir. 1993).

Before 2011, removal of an action could not be based on allegations raised in a counterclaim.  In 2011, however, Congress passed the Leahy-Smith America Invents Act, 28

---

[3]   In *Merrell Dow*, plaintiffs in a state court action alleged that the manufacturer and distributor of the drug Bendectin had negligently failed to warn consumers that the drug causes birth defects when ingested during pregnancy.  Although the plaintiffs did not allege that federal law created their claim, they relied upon the FDA definition of "misbranded" as creating a rebuttable presumption of negligence.  The defendant removed the case to federal court on the ground that the plaintiffs' case raised a substantial question of federal law.  The Supreme Court held that the case had been improperly removed because "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which [removal] jurisdiction would serve congressional purposes and the federal system."  478 U.S. at 814.

U.S.C. § 1454, which provides for removal of "civil action[s] in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1454(a).   Thus, Section 1454(a) authorizes removal of cases in which the only federal question arises in a copyright counterclaim.

**B.    Defendants' Counterclaim Does Not Present Claims "Arising Under" Federal Law**

The gravamen of Defendants' copyright-related claims in this case is their assertion that they own certain rights to literary works authored by Mr. Clancy and other works written post-death.  But Defendants' claim of ownership in these works *derives solely from contracts*.  First, Defendants' claim to ownership of the Jack Ryan character under Count II is based upon and requires interpretation of no fewer than seven contracts and agreements:

(a)   An agreement between Tom Clancy and the United States Naval Institute ("USNI"), dated November 21, 1983 (Complaint ¶ 32);

(b)  an agreement between Tom Clancy and USNI, September 28, 1988 (the "Settlement Agreement") (*id.* ¶¶ 47-48);

(c)  an instrument of assignment by USNI to Defendant JREL, dated December 19, 1988 (the "1988 Assignment") (*id.* ¶¶ 51-53);

(d)   a marital settlement agreement between Tom Clancy and his first wife, Wanda King, dated December 28, 1998 (*id.* ¶¶ 57, 62-65);

(e)   employment agreements between Tom Clancy and JREL, dated February 4, 1992 and January 1, 1994 (*id.* ¶ 67); and

(f)   an employment agreement between Tom Clancy and JRLP, dated February 26, 1992 (*id.* ¶ 68).

Second, Defendants' vague explanation and argument concerning the ineffectiveness of Plaintiff's Notice of Termination can only be understood as an interpretation of contracts entered into between Mr. Clancy and USNI, and between USNI and JREL. Because Defendants'

ownership analysis is based on contract law, Defendants cannot establish federal copyright jurisdiction.

> **1.      Claims of copyright ownership based solely on contract, and not derived from the Copyright Act itself, do not "arise under" the Copyright Act**

"It is well established that not every complaint that refers to the Copyright Act 'arises under' that law." *1Mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1049 (10th Cir. 2006). The Second Circuit, in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), set forth the "most frequently cited test" for determining whether an action arises under the Copyright Act. *1Mage*, 459 F.3d at 1049 (citing *Gener-Villar v. Adcom Grp.*, 417 F.3d 201, 203 (1st Cir. 2005)), which has been adopted by all other circuits to have addressed the issue, including the Fourth Circuit.[4]

Under the *T.B. Harms* test, a suit arises under the Copyright Act if: (1) the complaint is for a remedy expressly granted by the Act (*e.g.* a suit for infringement or for statutory royalties); or (2) the complaint asserts a claim requiring construction of the Act. *Arthur Young & Co. v. City of Richmond*, 895 F.2d at 970 (citing *T.B. Harms*, 339 F.2d at 828).

As one district court has noted, cases determining whether a suit arises under the Copyright Act can be classified as either (1) those in which the plaintiff's purported ownership rights in a copyrighted work were derived *under the Copyright Act itself*, or (2) those in which the plaintiff's ownership rights were *derived from a contract*. *Rogers v. Yonce*, No. 07-CV-704, 2008 WL 2853207, at *7 (N.D. Ok. Jul. 21, 2008). "Generally, those falling within the first

---

[4]   *E.g., Cambridge Literary Properties, Ltd. v. W. Global Porzellanfabrik G.m.b.H & Co. KG*, 510 F.3d 77, 86 (1st Cir. 2007); *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969-70 (4th Cir. 1990); *Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987); *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 2011 WL 3873768 (7th Cir. Sept. 2, 2011); *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1123 (9th Cir. 2010); *1Mage*, 459 F.3d at 1049 (10th Cir. 2006); *MCA Television Ltd. v. Public Interest Corp.*, 171 F.3d 1265, 1269 (11th Cir. 1999); *Scandinavian Satellite System, AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002).

category were found to arise under the Copyright Act… [and t]hose within the second category were determined to not arise under the Act, but instead were found to arise under state contract law…." *Id.*

The *Rogers* opinion is illustrative.  Rogers agreed to work for Yonce's company, SolarWinds, and was promised that he would share in the proceeds from the projected sale of the company.  2008 WL 2853207 at *1.  During his employment, Rogers created numerous software programs pursuant to an employment agreement, which provided that all intellectual property created by Rogers would be deemed works made for hire, and that such works would be *co-owned by the Company*.  *Id.* at *2.  When Yonce sold the company without notifying or paying him, Rogers brought suit in state court, claiming that because he was a co-author and co-owner of the software he created he was entitled to monies derived from the use of the software.  *Id.* The defendants removed the case to federal court and Rogers moved to remand.  *Id.*

Focusing on the second prong of the *T.B. Harms* test – whether Rogers asserted a claim requiring construction of the Act – the Court held that Rogers' claim of ownership was derived solely from his alleged contractual rights.  *Id.* at *5.  While agreeing that a reading of the "works made for hire" provision of the Copyright Act was helpful, if not necessary, to an understanding of the ambiguous contract, the court found that application of the Act "simply inform[ed] the court that SolarWinds and Rogers may agree in writing as to the authorship and ownership of any works created during the scope of Rogers' employment."  *Id.*  In fact, stated the Court, "application of the Act reiterates that the core issue in this case is whether the parties agreed to be co-authors and co-owners of the works."  *Id.* at *6.  Thus, the Court concluded, application of

the Act did not constitute "construction of the Act" within the meaning of the *T.B. Harms* test. The case did not arise under federal copyright law. *Id*. at *6-10.[5]

Other courts have uniformly held that claims of ownership to copyrighted works based on contract law do not arise under the Copyright Act. *See Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366, 379 (E.D.N.Y. 2014) (where a litigant seeks declaratory judgment as to copyright ownership that turns on interpretation of an agreement, such claims do not raise federal questions because they do not require that the court interpret the Copyright Act); *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984) (A copyright co-owner's "duty to account [to co-owners] does not derive from the copyright law's proscription of infringement. Rather, it comes from equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners"); *Roberts v. Swallow*, Case No. CV 16-03895, 2016 WL 4034778, at *4 (C.D. Cal. Jul. 25, 2016) ("an action for … determination of ownership as between alleged co-owners is founded in state law and does not arise under the copyright laws"); *Keith v. Scruggs*, 507 F. Supp. 968, 970 (S.D.N.Y. 1981) ("actions to establish title do not 'arise under' the copyright laws"). *See also, e.g., Gibraltar, P.R., Inc. v. Otoki Group, Inc.,* 104 F.3d 616, 619 (4th Cir. 1997) ("A dispute over property ownership does not properly fall under federal law just because the property is a federally-created interest like a trademark or a copyright"). *Cf. Postal Instant Press v. Clark,* 741 F.2d 256, 257 (9th Cir. 1984) (district court lacked jurisdiction over trademark dispute that "fundamentally asserts contract claims and only incidentally involves the

---

[5]   Compare *Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996), where, unlike Mrs. Clancy, plaintiffs asserted no contractual rights to establish ownership of a song, but rather claimed  ownership derived solely from the co-author provisions of the Copyright Act.  On those facts, the Court concluded that a determination of whether plaintiffs' contributions were sufficiently original to establish authorship involved construction of the Act. *Id*. at 56.

Lanham-Trade-Mark Act"); *East Iowa Plastics, Inc. v. PI, Inc.,* 832 F.3d 899, 907 (8th Cir. 2016) (ownership of trademark turns on state contract law, not federal law).

> ### 2.      Counts II and III of Defendants' Counterclaim are based on ownership of works derived solely from contract and therefore do not "arise under" the Copyright Act

Here, because the Counterclaim refers to copyrighted literary works, it may appear initially to present a basis for the exercise of federal jurisdiction.  But the facts belie such a facile conclusion.

> The Defendants allege that the Counterclaim presents two issues of federal jurisdiction:

> The Jack Ryan Entities have raised in Count II of their counterclaim a request for declaratory relief under the Copyright Act that their rights in Jack Ryan and other characters as author and copyright holder of the works for hire under the Copyright Act give them the right to share in proceeds from post-death Tom Clancy books making use of those characters.

Notice of Removal at ¶ 8.

> JREL has raised in Count III of the counterclaim a request for declaratory relief under the Copyright Act that the attempt by Ms. Clancy to terminate the copyright in the book The Hunt for Red October pursuant to a provision allowing the termination of a copyright other than a work for hire is ineffective as to the rights in the Jack Ryan character.

Notice of Removal at ¶ 9.  The contractual rights in question, though created by and derivative of, copyright law, do not trigger federal jurisdiction.

In an attempt to manufacture a basis for federal jurisdiction, JREL alleges, in Count II of its Counterclaim, that it obtained rights in the characters introduced in *The Hunt for Red October* "as a matter of federal copyright law."  Counterclaim ¶ 47.  But the Defendants' claim to the ownership of any such rights stems not from copyright law, but from contract – specifically, the 1988 Assignment and Tom Clancy's employment contracts with JRLP and JREL.  For example, Mr. Clancy's employment agreement with JRLP, dated February 26, 1992, provides that in

"consideration of the receipt of compensation as provided hereunder, Employee hereby assigns and transfers to Employer his entire right, title and interest in and to any and all books written by Employee either solely or jointly with others during the course of his employment with Employer."  *Id.* at ¶ 7.

Plaintiff does not dispute that, while employed by JREL and JRLP, Tom Clancy created works for hire, the copyrights to which, under his employment agreements and 17 U.S.C. § 201, were assigned to his employers.[6]  However, Mr. Clancy terminated his employment agreements with JREL and JRLP on December 31, 1997.  Complaint ¶ 69.  Thus, neither JREL nor JRLP had contractual rights to works Mr. Clancy created after his employment by these entities ceased. Thereafter, Mr. Clancy wrote new works for hire under an employment agreement with Rubicon. JREL and JRLP had no rights in works created for Rubicon, and accordingly no revenues from those works were paid to JREL or to JRLP.[7]  When Tom Clancy died in October, 2013, any employment contracts were terminated and ownership of works created by others after Mr. Clancy's death, but exploiting characters owned by Mr. Clancy at his death, must be determined by earlier agreements, including, as the Defendants concede, the 1988 Settlement Agreement with USNI in which Mr. Clancy's sole ownership of the characters in *The Hunt for Red October* was expressly affirmed and acknowledged.  *See* Complaint ¶ 48.  These are all matters of contract.

Similarly, Count III of the Counterclaim, although framed in an effort to create a basis for the exercise of federal jurisdiction, presents no copyright question.  Count III alleges that Mrs.

---

[6]   However, Plaintiff does not concede that any of the works listed in Paragraph 11 of the Counterclaim was created by Tom Clancy as a "work for hire" because each of them was published prior to his initial employment agreement with JREL dated February 4, 1992.

[7]   Both JREL and JRLP admit that "[n]either JREL nor JRLP shared in the proceeds, nor asserted any rights to share in the proceeds, earned by any of these pre-death, post-divorce works."  *See* Complaint ¶ 75; Answer of JREL and JRLP ¶ 75.

Clancy's March, 4, 2016 termination of Tom Clancy's 1988 assignment of the copyright to *Hunt for Red October* was ineffective because, the Defendants argue, Mrs. Clancy's termination notice is overbroad, describing a greater transfer ownership than was Mrs. Clancy's to terminate.  But this ownership issue is one of contract, as tacitly acknowledged by the Defendants' request for a declaration regarding the effect of a 1988 Settlement Agreement between Tom Clancy and USNI and Tom Clancy's alleged reacquisition and transfer of literary rights to JREL by an agreement of assignment made pursuant to the 1988 Agreement.  Counterclaim ¶ 62.  This is not a question of federal law. The question is one of assignment of property rights requiring an interpretation of the 1988 Settlement Agreement and the subsequent 1988 assignment agreement.  Not one word of the Copyright Act will assist the Court in adjudicating this issue.

**IV.    CONCLUSION**

For the foregoing reasons the Defendants' Counterclaim lacks subject matter jurisdiction.

Respectfully submitted,

/s/ _____
Norman L. Smith, Fed Bar No. 24057
nsmith@nusinovsmith.com
Jeffrey E. Nusinov, Fed. Bar No. 26701
jnusinov@nusinovsmith.com
Paul D. Raschke, Fed. Bar No. 03428
praschke@nusinovsmith.com
NUSINOV SMITH LLP
The Marbury Building
6225 Smith Avenue, Suite 200B
Baltimore, Maryland 21209
(410) 554-3600
(410) 554-3636 (fax)

- and -

/s/_____

Lansing R. Palmer, Fed. ID No. 807931
(admitted *pro hac vice*)
lansing.palmer@akerman.com
Erin M. Maddocks
Amanda Klopp
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY  10103
(212) 880-3800
(212) 880-8965 (fax)

*Attorneys for Plaintiff Alexandra M. Clancy*