**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALEXANDRA M. CLANCY,                          :

             Plaintiff,                          :          Case No. 17-cv-03371- ELH

v.                                            :

JACK RYAN ENTERPRISES,                        :
LTD., et al.,
                                              :
             Defendants.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S SUR-REPLY MEMORANDUM
REGARDING SUBJECT MATTER JURISDICTION**

Plaintiff Alexandra M. Clancy submits this Sur-Reply Memorandum and says:

In her Complaint, Plaintiff Alexandra M. Clancy asked the Circuit Court for a declaration that certain literary characters created by Tom Clancy, including the character Jack Ryan, were owned by Mr. Clancy at his death and are now owed by the Estate of Tom Clancy ("the Estate"). Mrs. Clancy's Complaint alleges that (1) revenues from books written after Tom Clancy's death, under the name Tom Clancy and exploiting Clancy-created characters, belong to the Estate, and therefore (2) by allocating certain of the post-death book revenues to Defendants Jack Ryan Enterprises Ltd. ("JREL") and Jack Ryan Limited Partnership ("JRLP") (the "Jack Ryan Entities"), the Defendant Personal Representative breached his fiduciary duty to the Estate.  Mrs. Clancy's position is based on interpretation of a series of agreements and assignments of rights executed during Tom Clancy's life.  *See* Complaint, ECF 2 ¶¶ 32-72.

The Jack Ryan Entities, as Counterclaimants, seek the same relief – a declaration of character ownership.  The Counterclaimants contend in Count I of the Counterclaim that the

agreements cited by Mrs. Clancy, "properly interpreted," support the notion that the Jack Ryan

Entities have some vague, as-yet-to-be-determined rights in Jack Ryan and other characters.

Counterclaim, ECF 9 ¶ 26.  In Count II of the Counterclaim, the Jack Ryan Entities argue that

the determination of character ownership raises a "pure copyright issue involving the

construction of the copyright law. . . ."  Reply Memorandum, ECF 31 at 2.  This, argue the

Counterclaimants, is because Tom Clancy wrote a number of the Jack Ryan books as "works for

hire" while employed by the Jack Ryan Entities.

The character Jack Ryan was first introduced in Tom Clancy's first novel, *The Hunt for

Red October*, which was published in 1984 by the United States Naval Institute Press ("USNI"),

pursuant to an agreement by which Tom Clancy assigned the *Hunt* copyright to USNI.  In 1988,

a dispute arose concerning the scope of his assignment of the *Hunt* copyright to USNI.  Tom

Clancy claimed ownership of, and the right to use, the Jack Ryan character in books written after

*Hunt*.  USNI asserted that, by virtue of its ownership of the *Hunt* copyright, it had exclusive

rights to the Jack Ryan character, and therefore, Tom Clancy's use of the character in later works

infringed the USNI copyright.[1]  The dispute was resolved in an agreement dated September 28,

1988 (the "Settlement Agreement"), in which USNI agreed to reassign the *Hunt* copyright to

Tom Clancy or his designee.  The Settlement Agreement also provided, specifically, that "all

rights in and to the [*Hunt*] characters are the sole property of the

 . . . author."

At Tom Clancy's direction, USNI assigned the *Hunt* copyright to JREL, a company

majority-owned by Tom Clancy and his then wife, Wanda King.  Thereafter, Tom Clancy wrote

---

[1]  Character rights have long been recognized as severable from rights to the work itself.  *E.g, Warner Brothers Pictures, Inc. v. Columbia Broadcasting Pictures, Inc.*, 216 F.2d 945 (9th Cir. 1954).  An assignment of copyright, without clear language expressing the intent to do so, will not be assumed to include assignment of character rights. *Id*. at 949; *Jim Henson Productions v. John T. Brady & Assocs.*, 16 F. Supp. 2d 259, 285 (S.D.N.Y. 1997).

certain works for hire as an employee of JREL and then as an employee of JRLP, a partnership wholly-owned by Mr. Clancy and Wanda King.[2]  However, any determination of character rights acquired by JREL or JRLP from these works requires the interpretation of contracts.  The ultimate question to be determined in this case is whether the USNI assignment of the *Hunt* copyright to JREL included character rights, when USNI's assignment to JREL followed, and must be subject to, USNI's prior agreement with Tom Clancy in which the parties expressly acknowledged that the *Hunt* characters "are the sole property of the author."

     The Jack Ryan Entities "admit that those words [characters are the sole property of the author] appear in the document, but aver their effect is to acknowledge that the reassignment of the Copyright for [Hunt] . . . included reassignment of the rights in the characters. . . ."  Jack Ryan Entities' Answer to Plaintiff's Complaint, ECF 3 ¶ 48.  The parties' opposing views raise issues of contract interpretation that implicate no federal question.

     After termination of his employment agreements with JREL and JRLP in 1997, Tom Clancy wrote eight books as an employee of nominal Defendant Rubicon, Inc. ("Rubicon"), a company wholly-owned by Tom Clancy.  Again, neither JREL nor JRLP made claims of copyright infringement against Rubicon and 100% of revenues from the Rubicon books were paid to Rubicon without objection by JREL or JRLP.

     Only after Tom Clancy's death in 2013 did the Jack Ryan Entities suddenly assert ownership rights to post-death works written by others, under the name Tom Clancy, and featuring Jack Ryan and other characters created by Tom Clancy.  Mrs. Clancy contends that because Tom Clancy owned the character Jack Ryan from the character's creation in *Hunt* – as confirmed by the USNI Settlement Agreement – through Tom Clancy's death, the Estate owns

---

[2]  JREL asserted no copyright claims against JRLP and made no claim for revenues from books written while Mr. Clancy was employed by JRLP using characters that had appeared in books written for JREL.

the character rights.

The Jack Ryan Entities make much of Tom Clancy's having created "works for hire" while employed by JREL and JRLP (while not mentioning his employment by Rubicon).   But while application of the Act's work-for-hire provisions may be helpful, if not necessary, to the interpretation of a potentially ambiguous contract, *application* of the act does not amount to *construction* of the Act.  *See Rogers v. Yonce*, No. 07-CV-704, 2008 WL 2853207 at *6 (N.D. Ok. Jul. 21, 2008).  Application of the Act may simply inform the court that the parties have agreed in writing as to the authorship and ownership of the subject work, setting the stage for interpretation of that contract.  *Id.*

In support of their position, the Jack Ryan Entities seek support in the Second Circuit's decision in *Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996).  That case, however, involved a claim of co-ownership under the Copyright Act.  There, two members of the 1950s singing group Frankie Lymon and the Teenagers alleged that they co-wrote and were, therefore, co-copyright owners with Frankie Lymon of the well-known song, *Why Do Fools Fall in Love. Id.* at 53.  In determining that the plaintiffs raised copyright claims, the Court distinguished a case requiring determination of co-authorship from one, such as the instant case, that arises from contract:

> Unlike a case where a dispute as to copyright ownership arises under an agreement between the parties, resolution of which depends on state contract law, .  .  . copyright ownership by reason of one's status as a co-author of a joint work arises directly from the terms of the Copyright Act itself.  Because disposition of this case "involves the application and interpretation of the copyright ownership provisions .  .  . federal jurisdiction .  .  . [is] proper."

*Id.* at 55 (citations omitted).  Rejecting the notion that "only the factual determination of whether the plaintiffs participated in composing the song is at issue," the Court explained that, in addition, it was required to resolve issues associated with the co-authorship issue, such as whether the plaintiffs' alleged contribution to the song was sufficiently original – issues

4

distinctly sounding in copyright.  *Id* at 56.  No such co-authorship issues are present in this case.

In sum, ownership of the Jack Ryan character may be viewed in five chronological stages: (1) the original creation of the character in *Hunt* (the root of the character without which no development is possible), (2) books written as works for hire while Mr. Clancy was employed by JREL, (3)  books written as works for hire while Mr. Clancy was employed by JRLP, (4) books written as works for hire while Mr. Clancy was employed by Rubicon, and (5) post-death books written by others under the name Tom Clancy and exploiting Clancy characters.

It can scarcely be disputed that, at his death, Tom Clancy owned the root of the character as created in *Hunt*, or that JREL, JRLP and Rubicon were entitled to receive and did receive the proceeds of those books written during the respective periods that Mr. Clancy was employed by each entity.  At issue now is whether JREL and JRLP are somehow entitled to a portion of the revenues generated by post-death books featuring Jack Ryan and other Clancy characters – a state law contract question.

Respectfully submitted,

        /s/ Norman L. Smith
Norman L. Smith, Fed Bar No. 4057
nsmith@nusinovsmith.com
Jeffrey E. Nusinov, Fed. Bar No. 26701
jnusinov@nusinovsmith.com
Paul D. Raschke, Fed. Bar No. 03428
praschke@nusinovsmith.com
NUSINOV SMITH LLP
The Marbury Building
6225 Smith Avenue, Suite 200B
Baltimore, Maryland 21209
(410) 554-3600
(410) 554-3636 (fax)

*Attorneys for Plaintiff Alexandra M. Clancy*

        /s/  Lansing R. Palmer
Lansing R. Palmer, Fed. ID 807931
(admitted *pro hac vice*)
lansing.palmer@akerman.com
Erin M. Maddocks
Amanda Klopp
AKERMAN LLP
666 Fifth Avenue
20th Floor
New York, NY  10103
(212) 880-3800
(212) 880-8965 (fax)